IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

HENRY JOSEPH JAQUEZ,

      **Plaintiff,**

v.

SHERIFF ELLIOT, et al.,

      **Defendants.**

Case No. 22-CV-230-JFH-JAR

**OPINION AND ORDER**

    Before the Court is Defendants' Motion for Summary Judgment ("Motion"). Dkt. No. 44. Plaintiff Henry Joseph Jaquez, who is proceeding pro se and *in forma pauperis*, submitted a response in opposition to the motion [Dkt. No. 48], and Defendants replied [Dkt. No. 50]. For the reasons discussed herein, the Court grants Defendants' Motion.

    **I.**    **Background**

    Jaquez brings this federal civil rights action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was housed as a pretrial detainee at the Wagoner County Jail ("WCJ") in Wagoner, Oklahoma. Dkt. No. 1 at 3-4, 14-19.[1] He raises three claims for relief. First, Jaquez contends he was "forced to eat all [his] food trays from off the floor" and consequently developed "a flesh eating desiease [sic] to [his] left hand." *Id.* at 14. He then claims he was deprived "outside recreation for excersize [sic]" from the date of his arrival, on or about October 17, 2021. *Id.* at 16. Finally, Jaquez asserts that, during his book-in process, two male staff members attempted to conduct his strip search in a bathroom and that, due to the small size of the room, their bodies touched. *Id.* at 17-19. He claims that, in response to his grievance of this

---

[1] The Court's citations refer to the CM/ECF header pagination.

occurrence, officials retaliated against him by forcing him to eat off the floor and denying him outdoor recreation. *Id.* at 18. Jaquez sues Defendants in their individual and official capacities and seeks injunctive relief, as well as compensatory and punitive damages. *Id.* at 2-3, 5.

## II. Legal Standard

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.'" *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). A fact is material if it "'is essential to the proper disposition of the claim.'" *Id.* (quoting *Adler*, 144 F.3d at 670). The assertion that a fact is or cannot be genuinely disputed must be supported by citation "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court "construe[s] the factual record and the reasonable inferences therefrom in the light most favorable to the nonmoving party." *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).

## III. Discussion

Jaquez asserts that each claim constitutes a violation of his constitutional protection against cruel and unusual punishment. *Id.* at 15, 16, 19. Cruel and unusual punishments are proscribed by the Eighth Amendment, which "applies to those who have been convicted of crime." *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). Because Jaquez was a pretrial detainee at the

time of the alleged conduct, however, his claims of custodial mistreatment arise under the Fourteenth Amendment's Due Process Clause, which prohibits "'punish[ment] prior to an adjudication of guilt.'" *Id.* (emphasis omitted) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). A pretrial detainee "can establish that official actions constitute unconstitutional punishment either by showing that 'an expressed intent to punish on the part of detention facility officials exists,' or 'by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective.'" *Id.* at 1163 (quoting *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013)).[2]

> Thus, in analyzing a condition of pretrial confinement, [the] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. If a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental

---

[2] Jaquez brings two claims involving the conditions of his confinement at WCJ and one claim involving alleged excessive force in the form of sexual assault. In *Kingsley v. Hendrickson*, the U.S. Supreme Court held that excessive-force claims brought by pretrial detainees could be established without proof of intent to punish. *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) ("[I]n the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'"). "[T]he circuits are split," however, "on whether *Kingsley* eliminated the subjective component of the deliberate indifference standard by extending to Fourteenth Amendment claims outside the excessive force context." *Strain v. Regalado*, 977 F.3d 984, 990 (10th Cir. 2020). In *Strain v. Regalado*, the Tenth Circuit declined to extend *Kinglsey* to Fourteenth Amendment claims of deliberate indifference to serious medical needs brought by pretrial detainees. *Strain*, 977 F.3d at 991. However, the Tenth Circuit applied *Kingsley* to a pretrial detainee's conditions-of-confinement claim in *Colbruno v. Kessler*. *Colbruno*, 928 F.3d at 1162-63; *see Strain*, 977 F.3d at 993 n.6 ("Even if not a classic excessive force case, *Colbruno* may otherwise be categorized as a conditions of confinement case" dealing with "the appropriateness of punishment."); *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1049-50 & n.7 (10th Cir. 2020) (Bacharach, J., concurring in part) (explaining that, while circuit courts disagree as to whether *Kingsley* extends beyond excessive-force claims, the Tenth Circuit applied *Kingsley* to a conditions-of-confinement claim in *Colbruno*).

3

action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 1162-63 (alternation, citations, and internal quotation marks omitted).

### a. Claim One: Food Placement

In his first claim for relief, Jaquez objects to WCJ's practice of distributing food by placing food trays on the cell floor "next to a restroom." Dkt. No. 1 at 14-15. He contends that the placement of the trays caused him to develop a flesh-eating disease affecting his hand. *Id.* at 14. Defendants assert that WCJ's food-disbursement practice was rationally related to the government objective of maintaining security. Dkt. No. 44 at 12-13. Defendants provided an affidavit from WCJ Administrator Ryan Russell, in which Russell avers that, because WCJ cells "do not have food service slots," inmates are "instructed to step to the rear of the cells and a tray with food is then placed inside the cell." Dkt. No. 44-3 at 1. At that point, the cell door is closed, and the inmates are "allowed to retrieve the tray and eat inside [their] cell however [they] choose[]." *Id.* This evidence is supported by Jaquez's own deposition testimony. Jaquez admits that the cells in WCJ do not have food service slots through which food trays can be handed, so inmates are required to step to the back of the cell while the cell door is opened, and food trays then are placed on the floor. Dkt. No. 44-1 at 12-14. Jaquez admits that, once the cell door was shut, he was allowed to retrieve the tray and eat his food at any available location within his cell. *Id.* at 13-15.

The sole piece of evidence Jaquez supplies in support of his claim is an affidavit in which he avers he "was forced to eat off the ground," which "caused irreparable damage to all (5) five fingernails on [his] left hand." Dkt. No. 48 at 21-22. To the extent Jaquez may be claiming that he was forced to eat food directly off the floor, his assertion is conclusory, unsupported by the record, and directly contradicted by his own deposition testimony. *See* Dkt. No. 44-1 at 15. As such, it is insufficient to create a genuine question of material fact on his claim. *See Hall v.*

*Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (explaining that "conclusory and self-serving affidavits are not sufficient" to prevent summary judgment).

Defendants' evidence demonstrates that WCJ's policy is reasonably related to the legitimate goal of maintaining security and the safety of WCJ staff. Jaquez fails to point to any evidence indicating an expressed intent to punish. Nor does he offer evidence suggesting that WCJ's food-distribution practice is unrelated to security interests or excessive in light of those interests. *See Colbruno*, 928 F.3d at 1163; *see also Winrow v. Stell*, No. CIV-13-1144-D, 2015 WL 3645702, at *12 (W.D. Okla. Mar. 5, 2015) (finding the objective component of an Eighth Amendment claim had not been met where the plaintiff claimed "that sitting on the 'dirty' floor 'caused [him] to contaminate his food as he had to touch the floor each time he sat on it' during his meals" (alternation in original)). Accordingly, the Court determines that no genuine issue of material fact exists to precludes summary judgment on this claim and Defendants are entitled to judgement as a matter of law. Fed. R. Civ. P. 56(a).

### b. *Claim Two: Deprivation of Outdoor Exercise*

Jaquez next alleges denials of outdoor recreation and exercise at WCJ totaling approximately forty days. Dkt. No. 1 at 16; Dkt. No. 44-1 at 9. The Tenth Circuit has held that the denial of outdoor exercise "could violate the Constitution under some circumstances," but the constitutional inquiry involves "a case-by-case examination of the totality of circumstances." *Lowe v. Raemisch*, 864 F.3d 1205, 1209 (10th Cir. 2017). Defendants contend that the denial of outdoor recreation was a necessary response to safety and security concerns. Dkt. No. 44 at 13-15. They point to Russell's declaration that WCJ "does not have the ability to safely offer outdoor recreation to pretrial detainees," and that this is "a safety issue and not to punish or deprive inmates." Dkt. 44-3 at 1. Defendants also point to Jaquez's deposition testimony regarding his

discussions with WCJ officials on the matter.  According to Jaquez, WCJ officials' explanation for the unavailability of outdoor recreation was that the recreation area was "dirty" and "dangerous, because people were throwing stuff and trying to get stuff in, and they were bringing drugs back in." Dkt. No. 44-1 at 11.

The evidence demonstrates that the denial of outdoor recreation was reasonably related to the legitimate government interests of maintaining inmate safety and preventing drugs from entering the facility.  *See Bell*, 441 U.S. at 540 (recognizing that legitimate governmental interests include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees").  Jaquez offers no evidence suggesting that the deprivation of outdoor recreation and exercise was imposed for the purpose of punishment.  *See Colbruno*, 928 F.3d at 1162-63.  Nor does he provide any evidence from which a rational trier of fact could conclude that the deprivation was unrelated to security concerns or that the forty-day deprivation was excessive under the circumstances.  *See Blackmon*, 734 F.3d at 1241 (explaining that the government has "a legitimate interest in ensuring the safety and order of the facilities where it houses pretrial detainees" and that "[r]estraints bearing a reasonable relationship to interests like these do not constitute punishment 'even if they are discomforting'"); *see also Ajaj v. United States*, 293 F. App'x 575, 584 (10th Cir. 2008) (holding that one-year denial of outdoor recreation was "not sufficiently serious to implicate the Eighth Amendment").[3]  For these reasons, the Court concludes that Defendants are entitled to summary judgment on the claim.

---

[3] The Court cites all unpublished decisions herein as persuasive authority.  Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

### c. Claim Three: Sexual Assault

Jaquez next alleges that, upon his arrival at WCJ, he was sexually assaulted by WCJ staff during an attempted strip search. Dkt. No. 1 at 17. He claims that two male staff members "took [him] to a little dark room to conduct a strip search," and that, due to the small size of the room, their bodies made contact. *Id.* Jaquez alleges that he was told to remove his clothes, spread his buttocks, and cough in a squatting position. *Id.* Jaquez removed his clothes but refused to comply with the other directives, telling the two staff members that the room was too small and their bodies were touching. *Id.* He claims that, due to his refusal to comply with the strip search, an x-ray was performed instead. *Id.*

A claim predicated on the sexual abuse of a pretrial detainee is "'a species of excessive-force claim.'" *Brown v. Flowers*, 974 F.3d 1178, 1182-83 (10th Cir. 2020) (quoting *Graham v. Sheriff of Logan Cnty.*, 741 F.3d 1118, 1126 (10th Cir. 2013)). While "longstanding precedent" acknowledges that sexual assault by prison staff constitutes a constitutional violation, Defendants contend that, in this case, the evidence demonstrates that no sexual assault or improper use of force occurred. *Id.* at 1183; Dkt. No. 44 at 2-3, 10-11. Defendants assert that the actions of WCJ staff were reasonably related to the legitimate penological interest of maintaining security and that the actions were proportionate to that purpose. *Id.*; *see Kingsley*, 576 U.S. at 398. Defendants direct the Court to Russell's declaration regarding the incident: "When Mr. Jaquez arrived [at WCJ,] the plan was for him to be placed in general population. We had no reason at that time to place him in protective custody. All new intakes to Wagoner County jail, who will not be placed in protective custody, are subject to a strip search. Mr. Jaquez refused the strip search so an x-ray was ordered to complete the search." Dkt. No. 44-3 at 1. In addition, Defendants point to Jaquez's deposition testimony that no intentional touching occurred other than when he handed the two staff members

his clothes and that none of the five named defendants personally participated in the strip search. Dkt. No. 44-1, at 3, 5.

Jaquez provides no evidence in support of his claim, other than his affidavit, in which he declares that he "was sexually ass[au]lted by (2) two male staff during a strip search." Dkt. No. 48, at 21. Here, again, Jaquez's affidavit is conclusory, self-serving, and in direct conflict with his own deposition testimony. *See* Dkt. No. 44-1 at 5. No evidence suggests that WCJ's strip-search policies or the staff's actions were motivated by an intent to punish. Nor can the Court reasonably infer an intent to punish from Jaquez's complaint regarding the size of the room. Unquestionably, "[c]orrectional officials have a significant interest in conducting a thorough search as a standard part of the intake process." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 330, 333-34 (2012) ("There is a substantial interest in preventing any new inmate, either of his own will or as a result of coercion, from putting all who live or work at these institutions at even greater risk when he is admitted to the general population."). Under the circumstances of this case and the evidence presented, no reasonable factfinder could conclude the attempted strip search was unrelated to this penological interest.[4]

Jaquez additionally alleges that Defendants retaliated against him for grieving this matter "by making [him] eat off the floor, and not giving [him] outside rec[reation]." Dkt. No. 1 at 18;

---

[4] Jaquez additionally alleges in relation to his sexual assault claim that he filed a grievance under the Prison Rape Elimination Act ("PREA") but received no response. Dkt. No. 1 at 18. To the extent Jaquez may be alleging a due process violation "premised on processes afforded him under the PREA," Jaquez has "failed to show the PREA provides an inmate with a private right of action, enforceable under § 1983, to challenge that process." *Johnson v. Garrison*, 859 F. App'x 863, 863-64 (10th Cir. 2021); *see Woodfork v. Nunn*, No. CIV-21-492-HE, 2022 WL 3008480, at *7 (W.D. Okla. June 29, 2022) (rejecting claim that prison officials denied inmate due process by failing "to properly hear or investigate his PREA complaint under the PREA procedures"); *see also Johnson v. Richins*, 438 F. App'x 647, 649 (10th Cir. 2011) (an inmate's "claim that [a prison official] mishandled his prison grievances does not implicate any due-process rights").

*see* Dkt. No. 48 at 22.  Jaquez does not clearly differentiate this allegation as a separate claim for relief.  However, to the extent the allegation can be liberally construed as a First Amendment retaliation claim, the claim must fail.  To establish a First Amendment retaliation claim, Jaquez must show:  (1) that he was "engaged in constitutionally protected activity;" (2) "that the defendant[s'] actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and (3) "that the defendant[s'] adverse action was substantially motivate as a response to the exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).  Even assuming Jaquez has met the first prong, he has failed to produce evidence supporting the latter two.  The facts underlying Jaquez's first two claims are not so chilling that they would dissuade a person of ordinary firmness from continuing to submit grievances.  And as discussed, Defendants have produced evidence demonstrating that the purpose underlying the food-distribution practice and the denial of outdoor recreation was the safety and security of staff and inmates.  Indeed, these practices were generally applicable to multiple inmates, not solely Jaquez.  *See* Dkt. No. 44-3 at 1.  Thus, assuming Jaquez has raised a separate retaliation claim, no factual dispute precludes summary judgment, and Defendants are entitled to judgment as a matter of law.

## IV.   Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Dkt. No. 44] is GRANTED.  A separate judgment shall be entered.

Dated this 13th day of August 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE